THOMAS W. LAING, petitioner-appellant,

*v.*

ELLEN LAING, defendant-respondent.

[Submitted February 5th, 1932. Decided May 16th, 1932.]

*Mr. Joseph W. Wilson* and *Mr. Joseph Beck Tyler,* for the appellant.

*Mr. Vincent deP. Costello,* for the respondent.

The opinion of the court was delivered by

WELLS, J.

The petition in this case was filed by the husband appellant seeking a divorce from his wife, the respondent, on the grounds of desertion.

The petition was dismissed on the advice of the advisory master, before whom the case was tried and from the decree of dismissal the husband appeals.

The master based his refusal to advise a decree of divorce on the ground that the husband had never made any effort whatever to secure the wife's return to him, and that it was not shown that such an effort would have been futile. The learned advisory master applied the rule that it was incumbent upon the husband to endeavor to secure his wife's return to him; the duty was his to make the advances, looking to reconciliation unless such an effort would be evidently useless.

The case is peculiarly one of fact.

The appellant and respondent were married November 24th, 1898, at Providence, Rhode Island, and lived together there until 1906, when they moved to Philadelphia, Pennsylvania. The petitioner was a journeyman steamfitter and made good wages, which up until the time they became estranged in 1917, he says he turned over to his wife *in toto.* He bought a home at 3142 Custer street, Philadelphia, Pennsylvania, where they lived together until the spring of 1917, when he claims she left him. The title to the house was placed in the wife's name. He says they lived happily together for about nineteen years and that the cause of their domestic troubles was his unwillingness to put up with her worthless brother, for whom he had given bond on a criminal charge; that she thought more of the brother than of him; that in the month of June, 1917, she left him, removed from

the home the household goods and placed them in storage, and that they never cohabited thereafter.

It would appear that thereafter he went his way and she went hers. He continued to work and she obtained employment. She rented the house and collected and used the rents.

In the month of July, 1919, appellant brought a suit for divorce against respondent in the court of common pleas of Philadelphia county, on the ground of desertion. This suit was decided against the appellant June 7th, 1921, when the court approved the report of the master dismissing his case.

Appellant's testimony is that the domestic relations court of the city of Philadelphia ordered him to pay his wife $6 per week for her support and that he made these payments regularly, and was still making them at the time he testified in this suit.

It would seem as if the dismissal of the husband's case by the court of common pleas of Philadelphia county cleared the wife of any charge of desertion prior to June 7th, 1921.

The appellant alleges in his petition that the desertion of his wife, upon which this suit is based, occurred on October 11th, 1921.

On or about May 1st, 1921 (while his Philadelphia divorce case was pending), appellant went to live as a boarder at the Custer street home, owned by his wife and rented to one Goldman. Appellant went there, he said, hoping that his wife would come there and he could ask her back.

About the last of September, 1921, Goldman gave up the house and appellant took possession, bought himself a bed and lived in the unfurnished home alone until October 11th, 1921.

On the evening the tenant left (the last of September, 1921), the respondent called at the Custer street home with an officer and demanded of appellant possession of her property. After making the demand she left and nothing more was heard from her until October 11th, 1921. Appellant came home at eleven o'clock that night, after working all day, and, finding that his key would not unlock the front door, went to the rear of the house and found his wife in the house

with an officer. She had moved the household goods in and taken possession during his absence. Appellant said that they (referring to his wife and the officer) opened the back door and the officer told him to come along with him, that he had no right in the house at all and that "you aren't going to stay here." That his wife said, "no, I don't want him here," and that they wouldn't let him go upstairs to change his clothes but the officer took him to the station house that night; and that the next morning he was bound over in $500 "to keep clear of his own place, to keep clear, not to go near;" that his wife was present at the hearing and said that she wanted him "to be kept clear of the home." When the case came up in court for final hearing it was dismissed, but appellant says he was still kept under bond "to keep clear of the home."

A number of witnesses to whom respondent had made statements were called by the appellant, some of whom testified that respondent had said she wasn't going to live with her husband again so long as she could get the money from him, or words to that effect, and one that she would rather die in the gutter than live with him. All of these statements were made prior to the time the appellant filed his suit for divorce in Philadelphia, and some of the witnesses testified for the appellant in that suit, and yet with this evidence available, the appellant failed to convince the Philadelphia court that his wife had deserted him prior to June 7th, 1921. Furthermore there is nothing in the testimony to indicate that any of these witnesses ever told appellant what his wife had said about him.

Assuming, but not deciding, that the conduct of respondent on October 11th, 1921, constituted desertion on her part, we are confronted with the next question—were the facts and circumstances such as to justify the appellant in failing to make an effort to bring about a reconciliation?

In other words, was the desertion obstinate, was it against the husband's wishes?

Both parties rely upon *Hall* v. *Hall, 60 N. J. Eq. 469.*

Mr. Justice Gummere, speaking for this court in that case, said:

"That a desertion, in order to be obstinate, must be persisted in against the willingness of the injured party to have it concluded, is declared by all our cases; and, ordinarily, when the husband has, by his conduct towards his wife, contributed in any degree to her original desertion, the law requires that he should evidence that willingness by making such advances or concessions to his wife as might be reasonably expected to induce her to return to him. But the law does not impose this duty upon the husband in every case, arbitrarily, and without regard to the facts and circumstances by which it is surrounded. The husband is bound to make such advances and concessions only where there is reasonable ground to suppose that such action on his part will terminate the wife's desertion. Where it is manifest, from the circumstances under which the desertion took place, or from her temper and disposition, or from any other fact in the case, that honest effort on the husband's part to terminate the separation would be unavailing, or, if successful in bringing the desertion to an end, would be so only temporarily, the duty of making it does not exist. The burden rests upon the husband of showing the futility of making the effort which the law ordinarily requires of him; for it will not be presumed, in the absence of proof, that the wife will persist in continuing her desertion against the honest attempt of the husband to bring it to a conclusion."

It is admitted by the appellant that the last time he asked his wife to come back was in 1919, before he started his Philadelphia divorce action. He offered no corroboration of this invitation.

He further admits that while he was boarding with Goldman at his wife's house in Philadelphia from May 1st, 1921, to October, 1921, and his wife was working at Holmesburg, Pennsylvania, he did not write to her, call upon her, or make any efforts to find her, and that with the exception of the two conversations in 1921, at the Custer street house, both in the presence of officers, he had not talked to or written to his wife since he began his divorce suit in Philadelphia in July, 1919, down to the beginning of the instant suit, November 19th, 1926.

He says hardly a week or month went by that he didn't have "slang letters and slang cards" coming through the mail from her; that he didn't read or even open some of them, and to none did he make reply.

Asked as to the contents of those letters, he said, "well, it was nothing but just slang. *Q.* What was the slang about? *A.* I don't know; it was trying to——."

His attorney then interrupted by saying, "the letters are here; they speak for themselves."

These letters may have shown the attitude of respondent toward appellant to be so hostile as to justify appellant in failing to attempt to bring about a reconciliation.

They did not seem, however, to have that effect upon the advisory master, who had them before him; and while they were offered in evidence, they are not printed in the case, so that this court is not informed as to their contents.

Counsel for appellant compares the instant case with *Foster* v. *Foster, 93 N. J. Eq. 182,* in which this court held that when a wife drove her husband from their home with an iron poker, called him abusive names, and had him arrested for assault and battery, which charges were dismissed for failure of proof, changed the lock on the door, so that the husband could not get in, it was willful, continued and obstinate desertion.

In citing this case, appellant's counsel failed to mention a most significant fact in the *Foster Case,* namely that the testimony showed that the husband made several honest efforts (and the court so found) to effect a reconciliation, which were repulsed.

Furthermore the Fosters were living together at the time of the incident described. In the case *sub judice,* the appellant and defendant had not lived together for four years prior to the incident which occurred at the Custer street house resulting in the arrest of appellant.

During those four years the appellant, instead of seeking to salvage the marriage, adopted a hostile attitude toward his wife. He brought a suit against her for divorce in the courts of Philadelphia, compelled her to bring suit against him in the domestic relations court to obtain support.

In the meantime she had been receiving the rentals from the Custer street house up to about October 1st, 1921, and paying the taxes thereon, and as soon as the tenant moved out, the appellant, without notifying his wife of his intentions, took possession of her property.

In such a situation, the respondent could, of course, not rent the property. When she called at the home and demanded possession, he made no effort to placate her, no suggestion that instead of his moving out, she come back home and that they live together again there as man and wife. It would seem that under such circumstances the conduct of the wife in demanding possession of the house, and, ejecting her husband therefrom upon his refusal to comply with her demand, was not unnatural.

Surely the appellant was, under the facts and circumstances of this case, under as great an obligation to attempt to bring about a reconciliation with respondent, as was the husband in the *Foster Case.*

The decisions aganst the appellant in the Philadelphia courts, and the inferences to be reasonably made from the evidence in the case *sub judice,* indicate that the appellant contributed to some degree, to say the least, to the original desertion; and such being the fact, then under *Hall* v. *Hall, supra,* and a long line of decisions in this court, it was incumbent upon appellant to have made an honest effort to bring about a reconciliation with his wife. That he did not do this is admitted.

He claims he was relieved from this obligation because it is apparent from the proofs that the temper and disposition of the respondent and her attitude toward him were such as to show that overtures for a reconciliation would have been futile.

The burden is upon the husband to show this. It will not be presumed, in the absence of proof, that the wife will persist in continuing her desertion against the honest effort of the husband to terminate it.

We are of the opinion that the appellant did not meet the obligation thus imposed upon him.

418

We are not prepared to say that an honest attempt on appellant's part would not have terminated the separation.

The decree of the court of chancery dismissing the appellant's petition is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ.   14.

*For reversal*—None.